UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 6:26-CR-00060 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| LEEALLEN JAMES GARY (01) | MAGISTRATE JUDGE CAROL B. WHITEHURST |

## MEMORANDUM RULING

On February 18, 2026, a federal grand jury returned an Indictment, charging the Defendant Leeallen Gary ("Defendant" or "Gary") with: (i) conspiracy to possess a controlled substance with intent to distribute (methamphetamine and fentanyl); (ii) possessing a controlled substance with intent to distribute (methamphetamine); (iii) possessing a firearm in furtherance of a drug trafficking crime; and (iv) maintaining a drug involved premises. [Doc. 1]. A jury trial for the Defendant and co-defendant Jaelon Jamar Broussard is set to commence on October 26, 2026.

Now before the Court is Defendant's MOTION TO SUPPRESS (the "Motion") [Doc. 52] in which he seeks to suppress evidence recovered from two state search warrants authorizing, respectively, the placement of an electronic tracking device on Defendant's vehicle and the search of a storage unit. [*Id.*]. Defendant argues that the search warrants were based on an affidavit that contained statements the affiant knew were materially false, or, alternatively, that the search warrants were issued on a "bare bones" affidavit. [Doc. 52-1]. The United States opposes the Motion. [Doc. 60]. Finding that no hearing is necessary, and for the reasons discussed below, the Motion is DENIED.

## I.  Background

On April 23, 2025, the Lafayette Parish Sheriff's Office ("LPSO") Narcotics Unit interviewed a confidential source that provided information pertaining to two different "large-scale drug dealers" in the community.  The source specifically identified the Defendant as one of those two dealers.  The source also provided descriptions of the locations and methods associated with each dealer's respective trafficking operations.  Specifically as to the Defendant, the source stated that the Defendant used his personal vehicle to deliver fentanyl to his customers.

The LPSO first opened an investigation into the information the confidential source provided with respect to the unrelated alleged drug trafficker.  Pursuant to this investigation, the LPSO executed a search warrant on the home of that individual in which it recovered cocaine, marijuana, and an illegally possessed firearm.  Finding that this search corroborated the reliability of their confidential source, the LPSO opened an investigation into the other alleged "large-scale drug dealer," the Defendant.

The LPSO began their investigation of the Defendant by reviewing police databases.  They then employed physical surveillance of the Defendant to confirm his address and the model, make, and registration of his vehicle.  Specifically, agents determined that the Defendant drove a white Ford Fusion, which was also registered to him.  On April 28, 2025, the LPSO applied for a search warrant to install an electronic tracking device onto the Defendant's vehicle.  The affidavit in support of the electronic tracking search warrant application stated as follows:

On April 23, 2025, agents with the Lafayette Parish Sheriff's Office Narcotics Unit interviewed a confidential source. During the interview, the source provided information regarding two suspects identified as large-scale drug dealers. The source also provided locations and details regarding their methods of operation.

Agents utilized the information on one of the suspects and initiated an investigation. This investigation led to the execution of a search warrant at the suspect's residence, resulting in the recovery of a substantial amount of cocaine, marijuana, an illegal firearm, and the arrest of the suspect.

Agents then began investigating the second suspect, identified as Lee Allen Gary Jr. A review of police databases revealed multiple incidents involving Gary Jr., which corroborated the information provided by the source.

Agents conducted physical surveillance on Gary Jr. and determined that he resides at 108 Bay Rum, Lafayette, LA 70501, and drives a white Ford Fusion bearing Louisiana license plate 404HFA. Database checks confirmed the vehicle is registered to Gary Jr.; however, the registered address is listed as his parents' residence. According to the source, Gary Jr. utilizes this vehicle to deliver narcotics, specifically fentanyl.

Agents attempted multiple surveillance operations on Gary. However, due to his travel patterns, maintaining continuous surveillance and observing potential drug transactions proved difficult.

Based on the above information, the affiant is requesting authorization for a tracking warrant to allow agents to install a GPS tracker on Lee Allen Gary's Jr. vehicle, identified as a white Ford Fusion with Louisiana license plate 404HFA, to assist in ongoing surveillance operations.

[Doc. 52-2, p. 2].

The state judge issued the warrant the same day, authorizing law enforcement "to attach to the subject vehicle … [an] electronic tracking device." [Doc. 52-2, p. 6]. Through surveilling the vehicle, agents learned that the Defendant frequented a storage facility. Agents spoke with the storage facility's staff and learned that the

Defendant was a customer, and that one of the Defendant's acquaintances signed the rental agreement for the storage unit that the Defendant regularly used. Agents then brought in a drug dog to do an open-air sniff. The drug dog detected narcotics emanating from the unit the Defendant used. Thereafter, on May 16, 2025, agents applied for a warrant. The affidavit in support stated as follows:

> Within the month of May 2025, the Lafayette Parish Sheriff's Office Narcotics Unit (LPSONU) received information from a confidential source (CS) regarding a male named Lee Allan Gary Jr., who was allegedly distributing fentanyl as well as other narcotics within Lafayette, Louisiana.
>
> Research through intelligence databases indicated that Gary resided at 108 Bay Rum Drive. During the investigation, agents conducted physical surveillance of the residence and discovered that Gary was utilizing a white Ford Fusion as his primary means of transportation. Agents applied for and were later granted a GPS tracker warrant to be placed on the Ford Fusion to assist with surveillance.
>
> After applying the GPS tracker, agents learned that Gary frequently visited a storage facility, The Storage Center, located at 2130 West Willow Street. Agent Denise, based on prior knowledge, training, and experience, recognized storage facilities as common locations for narcotics traffickers to use as stash spots.
>
> On [May 16, 2025], agents spoke with the staff at the storage facility and confirmed that Gary was a customer. Their records showed that Gary had a unit listed under the name of Kimberly Bruno, unit #522. Through investigative means, agents confirmed that Young resided at 108 Bay Rum Drive and was an associate of Gary. Agent Denise, drawing from experience with narcotics traffickers, understood that drug dealers often use an associate's identity to facilitate transportation, housing, and other aspects of their operation.
>
> Agents then arrived at The Storage Center with Cpl. Jamal Toussaint and K9 Loki.
>
> K9 Loki conducted an open-air sniff of the row of storage units near unit #522. Cpl. Toussaint informed Agent Denise that K9 Loki had detected the odor of narcotics emitting from unit #522.

> Given these circumstances, Agent Denise is requesting a narcotics search warrant for unit #522 at The Storage Center, located at 2130 West Willow Street, Lafayette, Louisiana.

[Doc. 52-4, pp. 2–3].

A state judge issued the warrant the same day, authorizing law enforcement to search the storage unit and seize narcotics and "related items associated with the distribution, selling, packaging, and or possession of illegal narcotics." [Doc. 52-4, p. 4]. Law enforcement agents executed the warrant that same day and seized controlled substances (approximately 4,635 grams of methamphetamine), drug distribution paraphernalia (a hydraulic press), and a firearm. The LPSO arrested the Defendant shortly thereafter and discovered a key to the storage unit on the Defendant's person.

## II.    Legal Standard

The Defendant argues that evidence from the storage unit search should be suppressed because the storage unit warrant relied on information from the electronic tracking warrant which, he contends, was based on an affidavit that either misled the magistrate or was so lacking in probable cause that reliance on it was entirely unreasonable. [Doc. 52-1].

Because the storage unit search and placing the tracking device on the Defendant's car were conducted pursuant to a search warrant, "[f]irst, we determine whether the good-faith exception to the exclusionary rule applies." *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002). Under the good-faith exception, "evidence obtained by officers in objectively reasonable good-faith reliance upon a search

warrant is admissible" even if a reviewing court later determines that the affidavit on which the warrant was based was insufficient to establish probable cause for the search. *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1922). If the officer is found to have acted in good faith, then the analysis ends there. *See United States v. Massi*, 761 F.3d 512, 525 (5th Cir. 2014).

There are four situations, however, where the good-faith exception is inapplicable. *See United States v. Leon*, 468 U.S. 897, 921–25 (1984). Only two of these situations are at issue here, whether: "(1) the magistrate [judge] issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; … [or] (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable…." *United States v. Peterson*, 161 F.4th 331, 342 (5th Cir. 2025), *cert denied,* 224 L. Ed. 2d 501 (Apr. 20, 2026).

The first situation concerns statements made "with reckless disregard or intentional falsity." *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012). And criminal defendants are only entitled to an evidentiary hearing with respect to the first exception by making a "substantial preliminary showing" that a false statement was included in the warrant and was necessary to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

The third situation is commonly referred to as a "bare-bones affidavit," and they are rare. *See United States v. Wilson*, 153 F.4th 478, 484 (5th Cir. 2025). These "'[b]are bones' affidavits [are those that] contain wholly conclusory statements, which

lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* at 321. Bare-bones affidavits "do not detail any facts, they allege only conclusions."[1] *United States v. Morton*, 46 F.4th 331, 337 (5th Cir. 2022) (en banc).

Courts should refrain from "second guess[ing] the magistrate who authorized the warrant" when looking at the affidavit through the lens of the good-faith exception. *Morton*, 46 F.4th at 336. Rather, the question is simply "whether officers objectively could reasonably believe that there was" such a nexus between the drug activity and searched location. *United States v. Bell*, 832 F. App'x 298, 301 (5th Cir. 2020), *citing Satterwhite*, 980 F.2d at 320. This nexus may be established through either direct observation or normal inferences. *Wilson*, 153 F.4th at 485. But binding precedent is clear that "the resolution of doubtful or marginal cases … should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

## III.    Analysis

At the outset, this Court notes that the Defendant has failed to indicate which specific statements in the affidavits were allegedly made with "reckless disregard or intentional falsity" such that the good-faith exception is inapplicable. *Triplett*, 684

---

[1]    Courts have consistently emphasized the requirement that the affidavit be wholly conclusory. *See e.g., United States v. Barrington*, 806 F.2d 529, 531 (5th Cir. 1986) (ruling that an affidavit which merely stated the affiant "received information from a confidential informant" who was known to him and had "provided information in the past that [had] led to arrests and convictions" was bare bones); *see also, e.g., Wilson*, 153 F.4th at 485–86 (determining that an assertion that the officer believed contraband was located in the home with "no observations, no inferences, [and] no corroborated tips" linking the home to the incident was "far too thin to make probable cause reasonable").

F.3d at 504.  As noted above, the Defendant must make a "substantial preliminary showing" of such a statement.  *See Franks*, 438 U.S. at 155–56.  Because the Defendant has failed to point to any specific statement, let alone make a "substantial preliminary showing," the first good-faith exception is inapplicable.  To resolve the third exception, *i.e.,* whether the search warrants were issued on "bare-bones affidavit," we must look at the information provided to the issuing magistrate in the two affidavits.

### A.      The Tracking Device Search Warrant

The specific factual averments in the first affidavit can be summarized as follows: (i) a confidential source identified two suspects, including the Defendant, as large-scale drug dealers; (ii) the confidential source provided information regarding the locations and details about the suspects' methods of operation; (iii) agents used this information to obtain a search warrant on the first suspect, where agents found drugs and firearms, leading to an arrest; and (iv) agents corroborated information obtained by the confidential source through a review of police databases that revealed multiple incidents involving the Defendant.  [Doc. 52-2].  Further statements also identified the Ford Fusion as belonging to the Defendant, specifically: (i) the Ford Fusion was registered to the Defendant; (ii) agents' physical surveillance of the Defendant determined he drove the Ford Fusion; and (iii) the confidential source informed officers that Defendant used the Ford Fusion to deliver narcotics.  [*Id.*].

Here, the affidavit contains more than a mere assertion that officers "received information from a confidential informant."  *Barrington*, 806 F.2d at 531.  It goes on

to detail the information received, namely the locations, details about methods of operation, and confirmation that Defendant uses the Ford Fusion to deliver narcotics. The affidavit further outlines agents' corroboration of the informant's tips through their review of police databases, confirmation of the Ford Fusion's registration to Defendant, and physical surveillance confirming Defendant operated the Ford Fusion. *See Wilson*, 153 F.4th at 485. Therefore, the affidavit in support of the tracking device search warrant contained both the specific information received from the informant and the agents' corroboration of the information. These statements go beyond a conclusory recitation of belief and provide "meat on the bones," distinguishing this affidavit from "textbook" bare-bones examples. *See Morton*, 46 F.4th at 337 (describing bare-bones affidavits as wholly conclusory).

While additional facts establishing the specifics of the nexus between the Ford Fusion and Defendant's drug distribution activities certainly would have bolstered the affidavit, courts should refrain from "second guess[ing] the magistrate who authorized the warrant." *Id.* at 336. An officer objectively could reasonably believe there was a nexus between the drug activity and the Ford Fusion based on the agents' direct observation of Defendant's use of the Ford Fusion and normal inferences made from the informant's information. *See Bell*, 832 F. App'x at 301; *see also Wilson*, 153 F.4th at 485.

At bottom, the affidavit for a search warrant to install and monitor an electronic tracking device "put all the relevant 'facts and circumstances' before the state judge, allowing him to 'independently determine' if the … probable-cause

standard had been met." *United States v. Devaney*, 109 F.4th 322, 327 (5th Cir. 2024), *quoting Morton*, 46 F.4th at 337–38.  Because the affidavit provided facts from which the state judge could draw a reasonable inference of probable cause, it was not "bare-bones."  Accordingly, the Court finds the officers acted in objectively reasonable reliance on a warrant in placing an electronic tracking device on Defendant's vehicle. And because the good-faith exception applies, this Court's analysis ends, and it need not reach the question of probable cause.  *United States v. Norman*, 129 F.4th 874, 877 (5th Cir. 2025).

**B.    The Storage Unit Search Warrant**

Defendant further argues that the evidence obtained from the storage unit should be suppressed because it was obtained through tainted evidence, namely the execution of the electronic tracking warrant.  [Doc. 52-1].  However, as discussed above, the electronic tracking warrant was executed in good faith.  That leaves only the Defendant's claim that the search warrant application did not include any evidence of criminal activity from the storage unit.  [*Id.*].  A review of the affidavit for the search warrant of Defendant's storage unit reveals otherwise.  The affidavit contains sufficient factual averments, specifically that: (i) the GPS tracker revealed that Defendant frequently visited a storage unit; (ii) staff at the storage facility confirmed that Defendant was a customer; (iii) a drug dog detected the odor of narcotics emitting from Defendant's storage unit; and (iv) based on her prior knowledge, training, and experience, the affiant recognized storage facilities as common locations for narcotics traffickers to use as stash spots.  [Doc. 52-4].

The issue presented here is similar to that presented in the Fifth Circuit case of *United States v. Bell*, 832 F. App'x 298 (5th Cir. 2020). In that case, the court addressed whether the search warrant affidavit contained sufficient observations and inferences to support the state court's probable cause determination that contraband was likely to be found at the residence. *Id.* at 301. The affidavit provided the following information: the defendant had sold drugs to an undercover officer on three occasions; two cars driven to those sales were seen outside the residence; the residence was the defendant's last known address; and the defendant traveled directly from the residence to a drug sale after making the arrangement. *Id.* "These observations were coupled with inferences, drawn from [the detective's] training and experience, that individuals involved in the drug trade often keep contraband in their residences." *Id.* The court determined, based on the observations and inferences, that "the state court could reasonably conclude that there were likely drugs and other contraband at the [r]esidence." *Id.* at 301–02.

Here, the Defendant frequently visited the storage unit, where officers confirmed he was a customer, and the K9 unit's identification of narcotics odor emitting from Defendant's storage unit directly linked Defendant's specific storage unit to potential drug activity. These observations, coupled with inferences drawn from the agent's prior knowledge, training, and experience that storage facilities are commonly used for narcotics stash spots, provide sufficient facts to allow the state judge to independently determine probable cause. *See Satterwhite*, 980 F.2d at 320. Such observations and inferences provide factual evidence of a nexus between the

storage unit and drug distribution activity, far from the wholly conclusory allegations of a bare-bones affidavit. *See Wilson*, 153 F.4th at 485–86 (concluding that a mere assertion that the officer believed contraband was located in the home was "far too thin to make probable cause reasonable").

The agent's affidavit therefore provided sufficient relevant facts to allow the state judge to "'independently determine' if the … probable-cause standard had been met." *Devaney*, 109 F.4th at 327*, quoting Morton*, 46 F.4th at 337–38. Accordingly, the Court finds the officers acted in objectively reasonable reliance on a warrant in searching the storage unit. *United States v. Norman*, 129 F.4th 874, 877 (5th Cir. 2025).

### C.    *Franks* Hearing

To be entitled to a *Franks* hearing, the Defendant must make a preliminary showing that: "(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause." *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002), *citing Franks*, 438 U.S. at 171. Here, the Defendant hints at entitlement to a *Franks* hearing, but fails to include in his Motion or any attachments the requisite preliminary showing that the affiant included a knowingly or recklessly false statement, or omitted material information, and that such statement or omission was necessary to the finding of probable cause. An evidentiary hearing is therefore not warranted on this showing.

## IV.   Conclusion

For the reasons discussed, the Court finds that the law enforcement officers executing the subject search warrant reasonably relied, in good faith, on a warrant supported by more than a "bare bones" affidavit.  And because the Defendant has failed to meet the requisite burden under the *Franks v. Delaware* precedent, the Court determines that a hearing is not required.  The Motion to Suppress is therefore DENIED.

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's MOTION TO SUPPRESS [Doc. 52] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 20th day of July 2026.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE